# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50156 | **DATE** | 11/30/2010 |
| **CASE TITLE** | Jean Howard vs. City of Freeport, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons set forth below, the court denies defendant's motion to strike, grants the motion for summary judgment as to all claims, and dismisses this cause in its entirety.

*Philip G. Reinhard*

■ [ For further details see text below.]                                                  Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Jean Howard, filed a complaint pursuant to 42 U.S.C. § 1983 on behalf of the estate of her deceased husband, Dwayne Howard, against defendants, Freeport police officer Bryan Politsch, in both his individual and official capacities, and the City of Freeport, Illinois (City)[1], alleging that Politsch violated her husband's constitutional rights through the use of excessive force, and that the City is also liable for such excessive force pursuant to an official policy and custom. In addition, plaintiff has asserted a claim under Illinois law for wrongful death. Defendants have moved for summary judgment as to all claims, and have also moved to strike an affidavit submitted with plaintiff's response to the motion for summary judgment.

In considering a motion for summary judgment, the court must view the record and all reasonable inferences drawn from it in the light most favorable to the nonmoving party. Scruggs v. Garst Seed Co., 587 F.3d 832, 838 (7th Cir. 2009). Summary judgment is appropriate when the materials before the court demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Scruggs, 578 F.3d at 838. The district court "should not weigh the evidence and determine the truth of the matter but rather whether there is a genuine issue for trial." Lewis v. Chicago, 496 F.3d 645, 650 (7th Cir. 2007).

### Background

On July 28, 2007, decedent was visiting Jeff Ayer, an acquaintance and a resident at 1530 S. Chicago Ave., Freeport, Illinois. Decedent made this visit with the purpose of collecting a debt owed to him for a prior drug-related transaction between the two individuals. While in Ayer's apartment, decedent and Ayer smoked crack-cocaine.[2] Following this consumption of crack-cocaine, decedent witnessed a small bug scurry across the table where he and Ayer were sitting. Decedent became agitated and paranoid and believed that Ayer was putting bugs on his clothing. As a result, decedent picked up Ayer's knife that was on the table, and then proceeded to call 911 seeking assistance from the police with the bugs. When the 911 operator answered his call, decedent complained of animals attacking him, and the operator dispatched officers to the scene.

| STATEMENT - OPINION |
|---|

At approximately 1:44 a.m. on July 28, 2007, Politsch, working as a uniformed patrol officer in a marked squad with his fellow officer, Tim Weichel, responded to a call from dispatch about a subject being attacked by animals at an apartment located at 1530 S. Chicago Ave., Freeport, Illinois. Officers Adam Wichman and Don Heath also responded to that call from dispatch and arrived at the scene around the same time Politsch and Weichel arrived. Weichel and Wichman entered the apartment building first, while Politsch and Heath remained outside. Weichel and Wichman began moving up the staircase in the foyer, but stopped about halfway when they heard an individual yelling in one of the rooms at the top of the stairs. Weichel told the subject, later determined to be decedent, to show himself at the top of the stairs, but decedent refused and told the officers to come upstairs.

Due to the noncompliance of decedent, Politsch entered the foyer of the building. Immediately after Politsch entered, decedent appeared at the top of the stairs holding a knife. Weichel yelled out "he has a knife" and then at least one of the officers verbally demanded that decedent drop the knife. Decedent was yelling incoherently and began quickly moving down the staircase while still holding the knife.[3] Meanwhile, Weichel demanded that decedent drop the knife while he and Wichman began retreating down the stairs. However, decedent continued down the stairs holding the knife, and, in response, Politsch stepped backwards as far as feasible, into a wall, and drew his service weapon, a Glock .40 caliber semi-automatic handgun. Weichel also attempted to draw his service weapon but had difficulty with his holster while backing away from decedent. As decedent approached the bottom of the stairway, still brandishing the knife, Politsch fired two shots in rapid succession from close range. Decedent was struck in the torso by both shots and fell forward, landing on the foyer floor. Wichman used his shoulder radio to call an ambulance for decedent, and then, along with Heath, handcuffed decedent. Politsch stepped outside of the building. Decedent died soon after, and a coroner's report concluded that decedent died as the result of hemorrhagic shock as a consequence of a gunshot wound to the chest, the second shot, with a contributing cause being a gunshot wound to the abdomen, the first shot.

**Motion to Strike**

A party is generally not permitted to create an issue of fact by submitting an affidavit whose conclusions contradict prior depositions or other sworn testimony. Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 1055 (7th Cir. 2000). The plaintiff submitted an affidavit by Dr. Larry W. Blum, M.D., in which Dr. Blum summarizes and clarifies information from the coroner's report written by himself. Although this affidavit appears to comply with the above case law, defendants have moved to strike the affidavit because of potential procedural missteps by plaintiff, as well as lack of foundation. However, given the information and conclusions contained therein, it is unnecessary to determine the validity of the affidavit. Dr. Blum's affidavit merely duplicates information given by his coroner's report, and, in and of itself, does not create or bring to light any genuine issues of material fact. Thus, the court denies the motion to strike as moot because, as will be seen, the affidavit does not affect the outcome of this case.

**Fourth Amendment Excessive Force Claim[4]**

Plaintiff argues that Politsch shot decedent used excessive deadly force in violation of decedent's Fourth Amendment rights. Plaintiff continues that the use of deadly force was unreasonable and thus unconstitutional under the circumstances, and that disputed factual issues bar summary judgment in this matter. Politsch responds that under the circumstances, he should be entitled to qualified immunity based on the undisputed facts and because the use of deadly force was reasonable as a matter of law.

An officer is entitled to qualified immunity where clearly established law does not show that an arrest or seizure violated constitutional rights. Marion v. City of Corydon, Indiana, 559 F.3d 700, 704 (7th Cir. 2009). Qualified immunity analysis has traditionally been applied as a two-prong test. First, the court must determine whether there was a constitutional violation at all. Phelan v. Village of Lyons, 531 F.3d 484, 487

| STATEMENT - OPINION |
|---|

(7th Cir. 2008). Second, the court must determine whether the constitutional right was clearly established at the time of the violation. Phelan, 531 F.3d at 487. However, the rigid two-prong framework of the qualified immunity test has been relaxed recently in that now, either prong can be analyzed first, and thus it is no longer necessary to analyze both parts if the officer can clearly show that one of the prongs is not met. Narducci v. Moore, 572 F.3d 313, 318 (7th Cir. 2009) (citing Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 821 (2009)). In this case, the issue may be resolved based on the first step of the qualified immunity analysis.

     Citizens have a constitutional right to be free from the use of excessive force during an arrest, investigatory stop, or other seizure of their person. Graham v. Conner, 490 U.S. 386, 395 (1989). The Fourth Amendment, which prohibits unreasonable seizures, is used to analyze claims that law enforcement officers used excessive force. Marion, 559 F.3d at 705. The use of deadly force by law enforcement officers constitutes a seizure under the Fourth Amendment, and, as a seizure, the use of deadly force must be reasonable under an objective reasonableness inquiry. Scott v. Edinburg, 346 F.3d 752, 756 (7th Cir. 2003). Thus, whether or not a Fourth Amendment right was violated depends on whether defendant's use of force was unreasonable under the totality of the circumstances presented at the time of his conduct. Marion, 559 F.3d at 705. The particular use of force must be judged from the perspective of a reasonable officer on the scene, and not judged based on the benefit of hindsight. Edinburg, 346 F.3d at 756. Further, the court should give some weight to the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation. DeLuna v. City of Rockford, 447 F.3d 1008, 1010 (7th Cir. 2006).

     When an officer believes that a suspect's actions place him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force. Muhammed v. City of Chicago, 316 F.3d 680, 683 (7th Cir. 2002). Further, if the suspect threatens the officer with a weapon, the risk of serious physical harm to the officer or others has been established. Bell v. Irwin, 321 F.3d 637, 639 (7th Cir. 2003).

     Here, the record is undisputed that decedent was moving quickly down a flight of stairs towards Politsch and the other police officers while brandishing a knife. It is also undisputed that the officers, specifically officer Weichel, demanded that decedent drop the knife at least twice prior to any gunshots, and that decedent declined to do so, continuing to move towards the officers. This is corroborated by independent witness Joyce Moore, a neighbor whose front door is located on the first floor of the building where the shooting occurred. After the incident, Moore declared to the police that, from inside her apartment, she heard an officer say to decedent, "drop the knife sir, drop the knife." Further, it is undisputed that the bullets that struck decedent in the torso were fired by Politsch in rapid succession. Deposition testimony by Politsch and non-defendant police officers demonstrates that these individuals feared for their safety at the time that Politsch fired his service weapon at decedent. Given the above facts, it is indisputable that Politsch believed that he or his fellow officers were in imminent danger of serious bodily injury, and thus his use of deadly force was objectively reasonable.[5] Therefore, unless plaintiff has raised some dispute as to the material facts, such as evidence negating the danger or threat of serious harm to the officers, then summary judgment for Politsch is proper.

     Plaintiff's argument for the existence of a dispute as to the material facts of this case rests solely on the reasonableness of the second gunshot fired by Politsch.[6] Plaintiff argues that there is a triable issue concerning whether decedent was "succumbing" to the first gunshot when Politsch fired a second shot, and thus that the second shot constituted unreasonable use of excessive force. Plaintiff purports to support this argument by pointing to witness testimony and medical evidence tending to show that decedent was falling forward at the time the second gunshot came into contact with his body. However, the fact that decedent was falling forward when he was hit by the second gunshot is already undisputed. Plaintiff's arguable inference that falling forward in between the two shots is equivalent to "succumbing" to the first shot does not create a triable issue of fact. Although the coroner's report clearly indicates that the second shot was indeed the fatal

shot, this does not create a material dispute on the question of whether Politsch acted reasonably in using deadly force by firing two shots in rapid succession into the torso of decedent. In contrast to plaintiff's argument, the evidence clearly demonstrates that decedent continued traveling forward, falling or otherwise, with knife in hand, towards the officers at the time the second shot struck his body. Further, the fact that the two gunshots were fired in rapid succession forecloses any possible inference that the first shot was reasonable while the second shot was not, as Politsch clearly did not have time to reflect on the effectiveness of the first shot prior to firing the second.[7] Thus, as a matter of law, Politsch was reasonable in his belief that he or his fellow officers were still in danger at the time the second shot was fired, and thus the seizure was reasonable.

Plaintiff also supports the above argument by citing case law asserting that "[w]hen an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity." Ellis v. Wynalda, 999 F.2d 243 (7th Cir. 1993). Although this proposition is good law and makes sense in some instances, plaintiff's reliance on Ellis in this case is misplaced. In Ellis, an unarmed suspect flung a lightweight bag towards the defendant police officer, then backed away, turned, and ran. Ellis, 999 F.2d at 247. The police officer shot the suspect in the back while the suspect was running away. Ellis, 999 F.2d at 247. The court determined that the officer's conduct was not reasonable because the officer clearly witnessed the suspect running away, had plenty of time to determine that he was no longer in danger, and in fact the danger had clearly already passed. Ellis, 999 F.2d at 247. The court, however, acknowledged that had the officer shot the suspect while the suspect was throwing the bag at him, or while he was still stunned from the bag hitting him, it would likely have been reasonable for the officer to use deadly force. Ellis, 999 F.2d at 247.

Actually, this hypothetical posed by the court is far more similar to the facts of the present case than are the actual facts of Ellis. This is so because Politsch had no time in between the first and second shots to determine if the danger had passed, and in all likelihood, the danger was still present because the suspect had not stopped moving towards defendant and had not relinquished the knife. As such, even resolving all disputes in plaintiff's favor, it is clear that Politsch was reasonable in his belief that he was in danger at the time he fired both the first and second shots. Because the seizure of decedent was reasonable, decedent's Fourth Amendment rights were not violated.

Because no constitutional violation has been found, it is unnecessary to continue with the second prong of the qualified immunity analysis. As a matter of law, Politsch is entitled to qualified immunity, and thus summary judgment for him as to the Fourth Amendment excessive force claim is proper.

### Municipal Liability and Official Capacity

A municipality may only be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom. Jenkins v. Bartlett, 487 F.3d 482 (7th Cir. 2007) (citing Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978)). Plaintiff has advanced no facts tending to show that defendant City had a policy or custom that caused any injury in this case. In fact, it appears that plaintiff has abandoned this theory of municipal liability, as plaintiff failed to respond to any of the arguments made by the City concerning municipal liability. Additionally, where there has been no violation of constitutional rights, there can be no municipal liability. Jenkins, 487 F.3d at 492. Because there is no dispute over the nonexistence of a City policy or custom that contributed to the injury, and because summary judgment has been granted as to the underlying constitutional claim, summary judgment is proper as to the municipal liability claim.

### Illinois Wrongful Death

Plaintiff has also asserted that she is entitled to recover against both defendants for the wrongful death of her deceased husband under the Illinois Wrongful Death Act. 740 ILCS 180/1, et seq. This claim is

## STATEMENT - OPINION

properly before this court through its supplemental jurisdiction, and thus the court may dispose of this claim where the disposition is clear and free from doubt. <u>Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.</u>, 277 F.3d 882, 896 (7th Cir. 2001).

Plaintiff's claim for wrongful death fails for several reasons. First, the claim is essentially synonymous with the constitutional claim asserted above, and thus plaintiff's failure to rebut any of the evidence indicating that Politsch acted reasonably in applying deadly force forecloses the possibility of a successful wrongful death claim.[8] Additionally, a finding that a police officer's use of deadly force was reasonable due to the imminent danger of death or serious bodily injury to himself or others has been found to foreclose actions based on both the Fourth Amendment and the Illinois Wrongful Death Act. <u>Muhammed v. City of Chicago</u>, 316 F.3d 680, 683 (7th Cir. 2002).[9] Because the action fails on that basis, the court declines to address whether this action is barred by the Illinois Governmental and Governmental Employees Tort Immunity Act. For the reasons stated above, summary judgment is granted to both defendants as to plaintiff's Illinois state law claim for wrongful death.

### Conclusion

For the foregoing reasons, defendants' motion to strike is denied, and their motion for summary judgment as to all claims is granted.

---

1. Because plaintiff has named the City separately as a defendant, the official capacity claim against Politsch is duplicative and is accordingly dismissed. See <u>Bratton v. Town of Fortville</u>, 2010 WL 2291853, * 4 (S.D. Ind. June 2, 2010) (citing <u>Kentucky v. Graham</u>, 437 U.S. 159 (1985)).

2. Because the consumption of crack-cocaine and other facts in this paragraph were unknown to Politsch at the time that he chose to use deadly force, these facts are not considered by the court in determining the reasonableness of defendant's actions.

3. Plaintiff disputes that decedent was yelling rather than speaking. However, plaintiff has failed to contradict or bring into doubt deposition testimony by officers Wichman, Weichel and Politsch that decedent was yelling incoherently from the top of the staircase.

4. Plaintiff additionally claimed violations of the Eighth (cruel and unusual punishment) and Fourteenth (substantive due process) Amendments for the use of excessive force by Politsch, but because the claim involves only a seizure, and does not involve punishment following a conviction, the claim is more properly analyzed under the seizure-specific standards of the Fourth Amendment. <u>Richman v. Sheahan</u>, 512 F.3d 876, 882 (7th Cir. 2008). Further, because plaintiff's claim is based on the Fourth Amendment, there is no proper basis for invocation of substantive due process under the Fourteenth Amendment. <u>Tesch v. County of Green Lake</u>, 157 F.3d 465, 472-73 (7th Cir. 1998). In any event, it appears that plaintiff abandoned any claims for independent Eighth and Fourteenth Amendment violations by failing to brief any arguments for such claims.

5. While plaintiff points out that the knife had only a three-inch blade, such a fact does not detract from the officers' reasonable conclusion that the knife created a threat of imminent serious danger.

6. Although plaintiff points to a dispute between the officers concerning which hand decedent held the knife in, the left or the right, this is not material to the question presented and will be properly ignored because minor inconsistencies in the statements of police officers recounting an event are not a basis to defeat summary judgment. See Henning v. O'Leary, 477 F.3d 492, 496 (7th Cir. 2007). Moreover, the danger presented by the presence of the knife did not depend on in which hand it was being held.

7. Plaintiff does not cite to, nor is the court aware of, any legal authority that would support a finding that firing two shots as opposed to one under similar circumstances is alone an unreasonable use of deadly force. Force is reasonable only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force. Cyrus v. Town of Mukwonago, No. 09- 2331, slip op. at 15 (7th Cir. Nov. 10, 2010). Force also becomes increasingly severe the more often it is used, and it is the totality of the circumstances, as opposed to the initial act of force, that determines objective reasonableness. Cyrus, slip op. at 15.
    Here, there is no evidence of any change in the degree of threat between the first and second shots being fired. Under the facts of this case, the second shot was essentially just as necessary as the first in quelling the threat presented by the decedent. Therefore, while in some situations a second shot might make the use of force more severe, such is not the case in a situation like the one facing the officers here.

8. The Seventh Circuit, in at least one instance, has found conduct that is unreasonable under the Fourth Amendment not to be willful and wanton for purposes of a wrongful death action. See Carter v. Chicago Police Officers, 165 F.3d 1071, 1081 (7th Cir. 1998). However, the opposite, a determination that conduct which is a reasonable response under the Fourth Amendment nevertheless can be willful and wanton conduct under state law, is a far less persuasive argument and has not been similarly accepted.

9. If the court were to independently analyze plaintiff's wrongful death claim, it is clear that the action would fail for lack of evidence that Politsch's conduct was willful or wanton, and it is similarly clear that Politsch was not the party that escalated the situation to one of danger. See DeLuna v. City of Rockford, 447 F.3d 1008, 1013 (7th Cir. 2006).